May it please the Court, Corrin Bell on behalf of Appellant Gene Irvin Atkins, good morning. Good morning, Counsel. After turning down a four-year plea deal to proceed to trial, Mr. Atkins was convicted of various counts of criminal threats, making criminal threats, violating court protective orders, and stalking, and he was sentenced ultimately to a term of 47 years and four months to life. Mr. Atkins raises a variety of constitutional claims in the instance of appeal. Of course, we're here under habeas ethnic controls. That's correct, Your Honor, although I would like to address that issue, so maybe I'll start there. And I do believe that both parties are in agreement that actually the de novo standard of review would apply to these claims because they were not adjudicated, with the exception of the second prong of the Strickland analysis with respect to the claim that trial counsel is ineffective. None of the other claims raised in this appeal were adjudicated on the merits. You don't have a claim, he didn't try to withdraw his, well, I guess he didn't take the plea, so I'm wondering, other than the obvious disparity between what he could have gotten and what he ultimately got, that's not relevant to the issue before us, is it, the four-year plea offer? Well, Your Honor, actually, I do think it's relevant. I think it's relevant to the question of the prejudice with respect to the sentence ultimately imposed on count 10. I mean, the fact that he turned down four years but later went to trial and as a result of the three strikes conviction got an enhanced sentence is relevant to what? Well, I think that Appelli raised the question of, look, isn't this error harmless when you look at what happened with respect to count 10? But he turned down the plea. I'm having a hard time seeing the relevancy of that statement. Yes. Let me explain why I think it's relevant. I think when you look at the procedural history of this case, you see an amended information. The information was specifically amended with respect to counts 9 and 10 to add allegations, prior conviction enhancement allegations. There were no, at the time it was amended, strikes were not added with respect to counts 9 and 10. But he had an amended allegation with regard to counts 1 through 4, did he not? Correct. There were strike allegations with respect to counts 1 through 4, which were ultimately stricken by the trial court at sentencing. Although I guess there's some confusion in the record as to whether all of the parties understood that the amendment also applied or the enhancement also applied to counts, what, 9, 10, and 11? Actually, that's the key issue is that I think the record is very clear on its face that what happened was that the trial court held a hearing prior to sentencing while the jury was out, before the jury had come back with the convictions, and said, okay, I want to understand count by count exactly what the allegations are here. And at that point, the district attorney misinformed the court and said, Your Honor, the court got it right the first time and said the strike allegations are only with respect to counts 1 through 4. And the district attorney came back and said, Actually, Your Honor, also 9 and 10. Well, that was a misstatement of the record, and I want to get back to your question about the four years and why I think it's relevant. If you look at the amended information, you'll notice that the stocking count, which was count 10, ultimately what became the most serious count of conviction, the upper term there was a term of four years. And so I understand the plea, though. I think one way to understand is, well, why was that four-year offer made? Well, because it reflected the upper term of that particular count of conviction, the stocking count. So this is relevant to the question of prejudice with respect to the ---- But what would have happened if the court had simply applied the enhancements on counts 1 through 4 rather than striking them? What could the maximum term have been on those four counts? Yes, Your Honor. Well, actually, Mr. Atkins was acquitted of count 2, so ultimately ---- Correct, Your Honor. So the maximum sentence could have been a term of 75 years to life as opposed to 125 years to life. But the issue here is that, and I think this is clear from the state jurisprudence, in particular the Garcia case, which was actually cited by the trial court, that many times the trial court will exercise its discretion to strike strikes with respect to the less serious counts. So here you have, going back to your question about the four years, you have a prosecutor who I think exercised discretion at the very outset of the case to say, look, I'm amending the information, I'm going to add some strikes, I'm going to add some different enhancements with respect to 9 and 10. I'm not going to add strikes with respect to 9 and 10. The prosecutor was under the belief, maybe wrongly so, that actually count 10 was covered by the strikes. He was mistaken, but he was of that firm belief that this was in play. Certainly by the time they got to the hearing on what the prior conviction allegations were, that's the case. I think the relevant question for prejudice, what would the prosecutor have done, had defense counsel at that moment said, actually, Your Honor, no, that's incorrect. The DA has actually misinformed you. The allegations were not pled with respect to 9 and 10. I don't think it's clear at all that the district attorney would have simply said at that point, oh, okay, well, I'm going to orally amend the information. Because I do think... But the statute permits that, does it not? Is that Penal Code section 969A on amending the information? That's correct. That can be done any time up until the time the jury is discharged, right? That's absolutely correct. If that's the case, and the prosecutor orally represents to the court and counsel that the defendant was facing an enhancement as to counts 1 through 4 and 9 through 11, the only thing missing here is a formal motion by the prosecutor to amend at that point. But apparently, everybody was acting under the assumption that your client was facing enhancements as to all seven of those counts. Isn't that what the record shows? Well, I think, yes. I think that what the record shows is that the court actually got it right and that the court cared very, very much about exactly what the allegations were per count. From a due process standpoint, the whole purpose of the filing of the amendment to the information is to give the defendant notice of the fact that he's facing an aggravated sentence. And you're not contending that he didn't know at that point in the trial that the prosecution was trying to enhance his punishment, do you? No, Your Honor. In fact, what the issue is, it is a due process issue, but it's not with respect to notice. It's with respect to the fact that I think it's really indisputed on the face of the record that the court based its sentencing determination, which was constructed around its erroneous understanding of count 10, on a misapprehension of the record. It's very clear that the court ---- You're calling it a misapprehension, but from a constitutional due process standpoint, at least on federal habeas review, don't you have to convince us that he was denied his federal constitutional rights to due process, which focuses upon notice and an opportunity to manipulate whatever defense you would offer on an enhancement? Although, as I understand it, the trial court conducted the enhancement phase in a bench trial, did it not, to determine the existence of the prior strike? That's correct, Your Honor. So now I'm having a hard time understanding where the prejudice is. Well, Your Honor, I think the prejudice goes to ---- I do think it's a due process issue, and I think that you're entitled to a sentencing proceeding that comports with due process. And here what you have ---- The real argument is a very hyper-technical one, that what we lacked here was a formal amendment, a motion to amend, even though all of the parties were under the understanding that the enhancement applied to all the counts. Well, I think that the problem here is that it's not clear that that's what the district attorney would have done. And when I say that, I ---- He told us what ---- He represented to the court that we're seeking enhancements on all seven of those charges. I don't understand what you said, what he would have done. I think the answer to your question is he would have formally moved to amend at that point if anybody had actually bothered to go back and look at the information. That, I disagree with Your Honor on that, because I think if you go back, and I see where you're coming from, but I think when you understand this in the context of the procedural history of the case, you go back and you say, okay, he was offered a four-year deal. Well, that happens to be the upper term of Count Town. They amended the information with specific attention to Count Town as well as Count Tyne, and the DA at that point specifically did not allege strikes. Well, why? An exercise of charging discretion at the outset of the case, perhaps for negotiation purposes, not to allege strikes with respect to that count, because perhaps, and what it seems to me, is that that ---- Was this the same prosecutor who actually filed the information as opposed to the deputy who tried it? I believe so. That's my understanding. I'm not sure I'm with you on your argument that that must have been his intent when he represented to the court in the middle of the trial that he was seeking enhancements as to all seven. Well, I ---- I see this basically as a ministerial error, but I'm having a hard time finding a federal due process violation in what happened. Yes, Your Honor. Well, I think that the court ---- there are really two issues. One issue is what the district attorney would have done. I'm not sure that it's ---- I don't think that it's clear that the district attorney would have proceeded in that way had trial counsel spoken up and said, hey, wait a second, actually, that's incorrect. You exercised your charging discretion at the outset of the case. Maybe he would have ---- maybe he wouldn't have, but I think that's speculative. Are you constrained to give a definite deference on that particular issue to the court, the state court's final determination? I don't think that the EDPA applies. This issue was the issue that I requested the COA on, which is did the trial court was ---- did the trial court's sentencing decision on count 10 rest on an erroneous understanding of the record? I think that's apparent from the face of the record. That was raised. That issue was raised before the Court of Appeal, and the Court of Appeal did not address that on the merits. The Court of Appeal basically made a procedural determination as to that question. So there are actually three claims, kind of subclaims, that Mr. Atkins raises with respect to the sentence on count 10. One of them is the request for the COA. The De Novo review would apply there, would be the argument under Cohn v. Bell, and that would be with respect to the court's erroneous understanding of the record. Then there are two separate claims with respect to trial counsel's ineffectiveness and appellate counsel's ineffectiveness. That was where I was going next. Yes. Do you have to get over the hurdle that there isn't any clearly established Supreme Court precedent with regard to whether there's a standard for ineffective assistance of counsel in a noncapital sentencing proceeding? Your Honor, it's correct that that is what the Ninth Circuit has held and, of course, that binding law right now. I think that when you look at when this particular proceeding occurred, when the critical error occurred, that was actually during trial. The jury was out. But it could have been corrected, right? I think we've established that had the deputy district attorney moved under 669A. Correct, Your Honor. It could have been corrected then. I think it's speculative to say that it would have been corrected. I think the DA had even advised at the time, hey, that's not what you did at the outset of the case. He might have said, oh, you're right, I remember. I didn't do that because I thought that it was in my best interest in order to get a plea deal, and I'm not so sure that he would have done it at that point. After the jury and the court had heard all of the horrendous behavior of Mr. Atkins in stalking this poor woman? Well, Your Honor, I think that there were the allegations were made with respect to the other counts, 1 through 4. There were convictions that came back on 1, 2, and 4. And so the district attorney might have just said, oh, okay, you're right. I didn't allege that at the outset. I'm not going to allege it now. If the court can impose, I'm urging the court to. I think the district should. I think you'd have a great argument if you didn't have the colloquy with the court as to what the amendment was intended to apply to. And I think we still have to get over the initial hurdle, which is, does ineffective assistance of counsel even apply to the conduct of a lawyer in the sentencing proceeding in a noncapital case? So you've got to get over that hurdle first before we even get to what was allowed under the statute. Yes, Your Honor. And I don't think that Davis is a barrier here for trial counsel because this proceeding took place during trial. I think for appellate counsel it's not a barrier because the error was apparent, or at least that's Mr. Adkin's argument, that the error was apparent. The fact that the court based its sentencing determination on this erroneous understanding of the record, that was apparent from the face of the record. That's something that appellate counsel should have raised. And had appellate counsel done some research, I think appellate counsel would have found, well, actually the way this proceeded was not this was an unauthorized sentence, or at least that's a good argument based on a published decision, which was available at the time, which said, look, where there's the suggestion where the prosecutor has exercised charging discretion at the outset of the case, the court can't supersede or override that charging discretion and apply counts where they don't exist. So unless the DA took that affirmative step of amending the information, it would not have been authorized for the court to go forward. So appellate counsel, I don't think Davis would be a block to appellate counsel. I guess I'll reserve the remaining minute for rebuttal, and perhaps I can get back to the other issues once you hear from the other side. Thank you, counsel. You may reserve time. We'll hear from the state. Good morning, Deputy Attorney General David Wildman for the respondent warden Debra Herndon. At the outset, I'd like to point out there are a number of issues that we're contending are uncertified, as well as the fact that we are contending that all the issues except the ineffective assistance of counsel are procedurally barred under the Dean-Dixon Bar. That is briefed in our briefs. And unless there are questions on that, I'll go on to the merits. As to the sentencing issue, I think it's a red herring. What we had here is a third-strike sentence, a third-strike allegation imposed on one count. This is the uncertified question, right? Sentencing issue or not? I think it's uncertified as to whether or not the trial court didn't properly exercise discretion. I think there's a certified issue as to the effect of assistance. Oh, in effect, yes, the IAC, yes. So I'm sort of separating those out, although they are related, and one issue does come up. Well, most of what opposing counsel talked about today was on the uncertified aspect of it. Yes. Very well. You may proceed. Well, as to the ineffective assistance, I think the question here is whether or not the defendant, Mr. Atkins, had fair notice of what the allegations were. These third-strike allegations of these two prior convictions are the same that were alleged at counts 1, 2, 3, and 4, and alleged as to 9 and 10. And there was no different separate defense he would have presented as to counts 9 and 10 that he didn't present as to the other counts. There's nothing he could have done differently. And ultimately, he wasn't prejudiced by the fact that his third-strike sentence was put on to count 10 because the third-strike sentence was struck as to the other counts. So it would have been little difference either way, and that's probably what counsel looked at. Mr. Weldon, what did the Superior Court judge do at the, I'll call it, separate strike proceeding after the jury returned his verdict on the various offenses? I believe that he found the two strikes true. He then conducted what we call a Romero hearing to find out, to figure out whether the strike should be struck in the interest of justice, declined to do that, and at sentencing imposed count 10 as the third-strike sentence because it struck the third strike as the other counts. So your argument would be the defendant would have the same motive and opportunity to offer whatever defense he had to the allegation and enhancement at that hearing, whether it applied to count 10 or counts 1 through 4. Is that right? Well, certainly the defense would either be that prior strike involves some other defendant, that's not me, identity, or somehow it's not a prior strike for whatever reason. It's the same defense that would have been offered no matter which count it was alleged as to. That's what I was trying to ascertain. So as near as we can tell from this record, the fact that there may or may not have been misunderstanding with regard to which counts the allegations related to Atkins had notice as to all of them and there isn't anything in addition to what he offered that he would have offered had he known about this issue. I can't see that there would be. It's the same prior conviction. Maybe Ms. Bell can help me on the rebuttal on that issue. And also on this issue, as the court and the public defender has noted, there is the Davis v. Grigia case as well as the other 9th Circuit case, Cooper v. Palmateer, Cooper Smith v. Palmateer, both of which say that the Strickland analysis doesn't apply necessarily to sentencing proceedings. I'd also like to briefly discuss the juror issue. I think Judge Gruber was correct in her dissent. She pointed out the difference between, you know, a sentencing proceeding where you apply 3553A or discretionary aspects on the one hand as compared to when there is an absolute issue of law as to what the appropriate sentence ought to be. She draws that distinction. It seems to me that she's correct, but I guess she was in the dissent. What do you make of that? Do you think the court should perhaps reconsider this? Well, I think Strickland, I think, also talks about this, that there's a difference between the formalized sentencing that you have with a capital proceeding where there's often a full jury trial. Judge Davis, the Supreme Court, you know, applied Strickland in a situation such as what we have in this type of case. I mean, just to conclude this comment and observation on my behalf, I wonder whether you have any thoughts on that. Well, it does seem like this is an informal proceeding that we had sentencing here, and therefore perhaps Strickland or the exact Strickland prejudice prong should not be applied. Anyway, let's leave it here. What happened at the hearing that the judge conducted, just to follow up on Judge Talmadge's questions, in deciding that the three strikes would apply to count 10? Did counsel for the defendant urge the judge not to apply the strikes for any substantive reasons? I'm not clear either exactly what happened at that time. After the jury verdict was returned, there was a court bench trial on the priors. Then there was what's known as a Romero hearing. The court considered whether the priors would be struck. That was a request by defense counsel. And defense counsel did urge that it not be applied to count 10, correct? That's correct. Anything further, counsel? Just briefly on the jury issue, this was neither ineffective assent of counsel not to strike the juror, nor was the trial court abusing its discretion not to strike that juror and keep that juror off. You had a juror who never said that she couldn't be fair, who, when questioned specifically about her prior experience with domestic abuse, said that she could put that experience behind her and be fair to the defendant. You also had a juror who had different experiences with domestic violence, who wasn't necessarily pro-prosecution, had not wanted to be brought into court eight years earlier, and still at this time had said that she felt that it wasn't quite fair that she had to be brought into court for that case. So on balance, this was a juror who could be fair to either side, and a reasonable trial attorney would not feel compelled to strike that juror. Very well. Thank you, counsel. Ms. Bell, you have a little bit of time left. I'm just going to touch very briefly on the juror issue and the sufficiency of the evidence issue, and then I'll come back at the end if that's all right, unless you prefer. Well, I'd like you to see if you can address the question that I posed to Mr. Wilder. Yes, Your Honor. And that was the question of what is really the harm, because couldn't the district attorney? What more could defense counsel have done, or what motive would defense counsel have had to offer something more in resisting the application of those prior? Yes, Your Honor. Well, I think that actually what I think that defense counsel compounded the error by inviting the court to, oh, please strike one of the strikes with respect to count 10. That's what counsel was urging the court to do, which compounded the error that the trial court was operating under, which was that the counts had been actually alleged with respect to 9 and 10. Now, is that your ineffective assistance argument? Yes, that goes to the ineffective assistance argument. And the prejudice there, I think, is that we, again, and I know we disagree on this, but with respect to, assume for a moment that the district attorney had counsel spoken up and said, hey, wait a second, just so you remember, this was your exercise of charging discretion at the outset of the case with respect to 9 and 10. Let's think for a moment what the trial court would have done. And I think under Garcia and the State Court Judge Pruden, it's not at all clear that the court would have necessarily simply sentenced him to the 25 to life strike count on one, counts one, two, or four. Because I think what trial courts do a lot of times is they look at, okay, what's the most serious count of conviction? And they apply the strikes to that. And when they're not a. . . What happened here. And that's what happened here. And so I think if you just assume for a moment, which I know you don't agree with. . . Counsel, your time is way over time. Okay. Thank you very much. Thank you very much. The case just argued will be submitted for decision. And we will next proceed to United States v. Graf. And we need to patch in counsel who will be appearing by video from New York City.
judges: Block, O'scannlain, Tallman